Good morning. My name is Sherry Kaufman from the Federal Defender's Office and I represent Curtis Howard. The substantive issue in this appeal is whether or not probation should be allowed to search a home where someone is merely visiting or an occasional guest and not residing. In the incident case, it appears based on the testimony that the probation officer believes that he can search any home where a probationer is even for 15 or 20 minutes. Not residing in that home? Correct. Well, was there a finding that he was? It's interesting because the finding as to residence is really unclear. The magistrate judge in her opinion, and we use that opinion because the district court judge basically just affirmed that opinion. The magistrate judge used two different standards. Twice she said, and I could show the court where on EER 443, line 17. I'm sorry, which page? 443, line 17, and 444, line 26-28. She indicates there was cause to believe that he was staying with Varner, and the staying with is not the standard in this circuit. The standard in this circuit is probable cause to believe that he resides somewhere. Are you saying there wasn't a finding that would support the search? I am saying that the magistrate – I'm sorry, sir. Or that the finding was clearly erroneous, which – I am saying that the magistrate judge made different findings. It was clear she was confused as to what the standard is. The standard is basically probable cause to believe he resides there. I believe based on the factors that there is no probable cause to believe he resides there. I think the magistrate judge in her decision basically found – used two different standards. One is residing and one is staying. And staying clearly is not enough in this circuit. Well, why should we take such a technical view of residing? I mean, it's a practical question. Where does he spend his time? Correct. And I think there's a fair amount of evidence here. He spent his time with his girlfriend. Well, I'm not sure that there is. And I think – Well – Let me just point to the factors that I think that the magistrate judge left out in her decision. I think residing is more than just spending a substantial time. And that's based on the court's opinions in Watts and in – and in – excuse me. Well, Watts – well, we've got the unbanked court in Motley. Isn't that what's going to guide us? Yes, Judge. But Watts and Howard are basically similar situations as here. And they look at certain criteria. And in Watts and Howard, one of the most significant things – and the most significant thing in this case is that Mr. Howard had no key to this residence. He had no key. Keys? I mean, that's an awfully technical thing. I don't know that it's technical. He lets him in. What difference does it make whether he's got a key or not? Well, then if she's not there, he can't get in. So that's a sign of a visitor, not a sign of a resident. Well, she leaves it unlocked for him. I mean, I just don't see having a key as the equivalent of being a resident. Well, I would say that's one of the factors. Another factor in this case that the magistrate judge failed to consider is the fact that they surveilled him from February 17th to March 8th and never saw him at this address. Never. The only evidence anyone has that he was at this address comes from an anonymous tipster. Well, it was a pretty good tip. Well, the fact that it turns out to be a good tip on a specific day, it was a pretty good tip on February 3rd when the person called and said he was there. He wasn't there. Probation officer basically went and what she said was not true. When they called the next day on February 7th and said she was there, indeed a car was there, but no one ever saw him in the residence until the morning of the search. And that's significant. The reason why it's significant is 80% of the time when they checked his so-called residence, he wasn't there. Okay, well, you're talking about 80% of the time, but what you have to remember is the probation officer indicated that was not a problem for him until he got this tip. They did see him in his residence in January. He has utilities. He has clothes. He has pictures. He has food in the refrigerator. There's no indication he wasn't living there. The neighbors said, and they interviewed the neighbors before this happened, that he was living there. So I don't know that you have 80% of the time he wasn't there. They went to see him, and you're right, 10 out of 12 times he was not there. But that was over a much longer period, and they didn't cater it to his work schedule. And also, if you recall, there's an indication that he has two children who live in the area, and they didn't check and see whether he was in those homes. The fact that he's not home when they visit haphazardly doesn't mean he doesn't live there. In fact, every indication is he did live at the Owens address. And you can do that by utility bills and by neighbors. And the fact that he did find him there on two occasions. How much stuff did he have at his girlfriend's place? Actually, the magistrate judge said the only thing that he had was a prescription bottle. That's in her findings. I thought there was a finding that he had some clothes. I am—I looked at the record, and all the arguments that they found clothes, and the magistrate judge's report and recommendation, she indicated they found a prescription bottle and a business card. There was no indication in her findings that there were any clothes of the defendants there. There was testimony that Ms. Barnett said he had clothes there, but when the question ultimately was given to the probation officer, the only thing they found was a prescription bottle and the probation officer's card, which would indicate certainly that he spent the night. And there's no doubt that he basically did stay there occasionally, but the court has to find that he resides there. And in order to find that he resides there, the court would have to basically conclude that all the surveillance by the police just didn't happen. They surveilled him for three to four weeks. He was never at that residence. Even when they went to that residence on March 17th, the people at the residence said they hadn't seen him for at least 10 days. They did— Excuse me. Counsel, the motley clearly establishes that we have to have probable cause to show that he resides there. What standard do we use to show residence? I think it's substantial evidence. No, no. I'm not asking for a level of evidence. I'm asking, what is it that we have to have evidence of? That he resides there. That's circular, because I'm now asking you to tell me what it is to prove that somebody resides in a particular place. I think certainly if you reside someplace, you have the ability to exercise dominion and control. I mean, that certainly would be at a minimum standard. That's a very strong definition. Well, I don't know, sir, that you can say someone lives someplace if they can't get in when someone else is not there. I don't know that you can say someone lives someplace when they have another residence that they have utilities in and that people say they're living there. I think in this case, all the evidence shows he doesn't live there. And the way you know that is when they went and did the search in this case, they had had nobody until that day who saw Mr. Howard in that apartment. Not a single person except for this anonymous tipster saw him in the apartment. And we don't even know whether she saw him in the apartment. And she never said he lived there. She said he stayed there, which is a very different standard than living there and residing there. That's wonderfully technical. Well, sir, people can certainly stay. If I go to New York and I stay with my parents, it doesn't mean I intend to reside there. I have a place where I reside. Mr. Howard had a place where he lived. He certainly stayed overnight at his girlfriend's house. I am not saying he did not do that. But the search clause is such that you have to reside there. It's not probable cause to believe you stayed there for two days or four days or six days. You have to reside there. And what the judge used in determining that he resided there or stayed there, basically two of the criteria she used came from a tipster who we were not allowed to cross-examine. The other criteria was that they visited him at the Owens address, and he wasn't there 10 of 12 times. And the other criteria is that people said they saw him in the complex, although no one saw him in that particular apartment. And the significant thing about the surveillance, and there was police surveillance because I know the court saw that they tried to get him to sell a gun and do other things, is three different agencies surveilled him from, I believe it's February 8th to March 17th. February 17th to March 8th, nobody, not Metro, not ATF, not probation, not the gang task force, saw him at that even apartment complex during the three weeks. Okay, before February 17th. So I understand between February 17th and March 8th we have conducted surveillance, which hasn't shown up, hasn't turned up anything. Well, it turned up that he's not at that residence. Right. But prior to February 17th when they started the surveillance, did the police have probable cause to believe that he resided there? In other words, had they done this search prior to February 17th, would there have been probable cause? No, sir, because all you have basically is a tipster information, and you have the first date it didn't work out, and the second date they saw his vehicle, but no one saw him in the residence. I don't think that's sufficient for residence. And I think you can't look at it in a vacuum because they did the search on March 30th, and what you have to look at is what they knew on March 30th. And on March 30th what they knew is basically that no one had seen him at that residence, it looks like, for almost four weeks, and they had surveilled him and not seen him there. So their information obviously was incorrect. But they knew that his girlfriend wanted him, wanted to move in with him, didn't they? A year before, sir, yes. They did know that. But that doesn't mean he lives there. When they know, I mean, he's violating his probation and associating with her. Is that a factor too? Is that a factor in whether they could search the residence? No, because they have to believe he lives there. Well, why? I mean, he's violating his probation. Can't they act to stop that violation? He was already outside the residence when they arrested him. They had no right to go into her residence. And I have one more minute. I'd like to reserve it for rebuttal, if that's okay. Thank you. Ms. Brown? Good morning, Your Honors. Christina Brown from the District of Nevada. Your Honors, the decision of the trial court in finding that under the totality of the circumstances probable cause existed to believe this individual resided with Tammy Barner, thereby justifying that the court found that there was probable cause that she stayed there. Actually, Your Honors, if I may point out in the record, at 443, line 26, the court concludes that under the totality of the circumstances, the officers conducting the search had probable cause to believe Howard was residing with Barner. I was looking at 444, which is the final conclusion. I can't have it right. Your Honor, unfortunately, pardon me. In short, the court concludes that on March 30, 2004, the day the search was conducted, the totality of the circumstances established probable cause to believe Howard's staying with Barner. Well, that's not the proper standard, is it? I wouldn't support the search. Not if the court found that Mr. Howard was an overnight guest. I agree with the court on that, but I believe that, unfortunately, within the language of the finding and recommendation, the court did on some occasions use these terms interchangeably. But she said the problem is that we don't know what to make of it, because if he's only staying, he wouldn't necessarily be residing. But if this court is to apply the law to the facts of the case as found by the magistrate court, I believe that clearly the evidence, the facts, and the records support a finding that, in fact, probable cause did exist to believe that Mr. Howard was, in fact, residing with Ms. Barner. What do you say are the indicia of residence in this case? Well, there are numerous. As opposed to what Ms. Kaufman would ask this court to rely solely on, the tip that was provided by the informant, when, in fact, there were at least 14 factors supporting probable cause to believe that Mr. Howard was residing with Ms. Barner. The first information came from the defendant himself, that his stated intent was to not only associate with Ms. Barner, but also to reside with her. That was what he said at the outset of his supervised release. The information from the confidential informant was received a year later, but, in fact, when the probation officer began his investigation pursuant to his statutory duties, he found substantial evidence to corroborate the information that this informant provided. In addition to information... Counsel, you're speaking at a very, very high level of generalities. Let's see. I'd like you to answer, see if you can answer Judge Schwarzer's question a little more specifically. So Mr. Howard had asked for permission a year before all of this so that he could live with her, okay? Now, what evidence do we have that he did that? Well, several things, Your Honor. First off, he was not at his own residence eight out of ten times when he should have been there, according to the probation officer. Okay, but that doesn't prove that he resides someplace else, does it? Well, it certainly goes to show that at the time he would normally be in his own residence, he wasn't there. It's just a piece of information. But these are also sort of random events when a probation officer comes by. So if a probation officer were to come by your apartment, for example, at random hours and not find you there, we wouldn't necessarily conclude that you resided someplace else, would we? Certainly not. But that's just one piece of information that the probation officer had. In addition to that, he went over to Ms. Barner's apartment, apartment 49, on two occasions in very early morning hours, including the date of the search, and found Mr. Howard's car parked right below apartment 49, strongly suggesting that, in fact, he was staying there at least overnight. In addition, he confirmed with five different people at the apartment complex over a course of a couple of months, all of these individuals recognized Mr. Howard. Some of them had been introduced to him by Ms. Barner as her boyfriend. Why is he known by five different individuals that reside at this complex as her boyfriend there on a regular basis? They've seen his car there. Initially, when he began, he, the probation officer, began investigating, individuals recognized him and his vehicle as having been regularly at the apartment complex. And then as recently as the day of the search, which should be the focus of this court's inquiry, as Ms. Kauffman said, what did the officers know at the time that they went into the apartment? Why didn't the police just get a search warrant? Certainly in any instance, Your Honor, an officer can get a search warrant. There were no exigent circumstances. They've been watching the guy for weeks and weeks and weeks. They could have gotten a search warrant. And how many times have they seen him at the apartment? They saw him that very morning. Okay, they saw him that morning. So we saw him there once. That doesn't give them probable cause to believe that he's residing there, does it? Why didn't they just get a search warrant? They knew where the guy was now. Well, again, Your Honor, in every case where there's an exception to the search warrant requirement, the court can look in hindsight and say, well, all of these problems would have been solved. But you're not arguing for an exception to the search warrant, are you? Well, in fact, it is in some sense in that he's on supervised release. Therefore, he is subject in his agree to a warrantless search of his residence. I think the inquiry for the court today is was there probable cause at the time these officers entered the residence for them to believe that he, in fact, resided there. His own statements that very day were that he had been staying there. Ms. Barner initially, when they spoke to her, lied and said, he's not here, I don't know where he is. And then when she saw that they had Mr. Howard in custody, admitted, well, in fact, you know, he does stay here and some of his belongings are in the apartment. And I think one important fact is if, in fact, he was an overnight guest, then why didn't he take his belongings with him? Why didn't he take his prescription with him? That's right. He's a frequent overnight guest. I seem to indicate. That's certainly what he would like this Court to hold. But the problem with that, Your Honor, is that if this Court so narrowly constricts what it so narrowly defines what constitutes a residence, then that essentially turns over the reins to any defendant who wants to circumvent the probation officer's authority and ability to investigate whether he's abiding by the terms of probation by saying, well, I'm just an overnight guest. I leave all my belongings here, but I'm an overnight guest. Is there any case that's gone as far as you're urging us to go in the Ninth Circuit? What's the best case that supports the search in this case? I believe that the Motley case does, Motley v. Parks. I believe that Harper does. I believe that those cases – pardon me? Is there any facts in Harper that support the search in this case? I think that they do, yes. How is the case related to the person who had a key? That's right, Your Honor. But the fact that he had a key should not be determinative. I mean, I think that the facts in Harper were far less persuasive than the facts that we have here today. Mr. Harper had merely resided with his family somewhere else prior to his incarceration. And the officers went. They saw him, I think the Court said once or twice, gaining access to the apartment with a key. But there was no evidence that he was residing at this place on that particular occasion. And the officers found vehicles belonging to his associates, not even his own car. Here, the defendant's car was parked at 4 and 5 o'clock in the morning below this apartment. Over the course of time, we have five people that are residing at the apartments or at least working there confirming they know him. They've seen him on a regular basis being there. He himself admits that day that he stays there. Ms. Barner says he's got belongings inside the apartment after having lied about his presence. Why is she lying if, in fact, he's merely an overnight guest? She knows she's not supposed to be associating with him. She knows that they've been denied permission to reside together. And I think that all of these factors certainly led the probation officer to have probable cause to believe that he was merely carrying through on the intent that he initially stated, which was to affiliate with Ms. Barner and to reside with her. Well, actually, they were prohibited from associating with each other. That's correct, and also residing. They had sought permission not only to associate, but also she stated she provided the probation officer back a year before her address, this very same address, and said, I would like Mr. Howard to move in with me. And the probation officer denied that request because of her seven prior felony convictions. In short, Your Honors, I believe that all of these factors that have been set forth in the briefs and that I've stated today certainly gave the probation officers, the officers that day, reasonable cause to believe, under the totality of the circumstances, that Mr. Howard was, in fact, residing with Ms. Barner. And as such, they had probable cause to go in and execute the search. And I ask the Court to affirm the decision below. Thank you, Counsel. I think looking at the Horba case, the Horba case where they said there was just barely enough is really much more significant than the evidence here. In the Horba case, he had a key. The other thing is he had no other address. And the other thing is that they confirmed a tip by surveillancing him there one or two times during a three-day period. So it's obviously much more significant than we have here. And the Court there said barely. They should have gotten a search warrant. And as to the Court's question as to why they didn't get a search warrant, they couldn't have gotten a search warrant. The information they had not only was stale, it was uncorroborated. They had not seen his car there for 56 days on the day they did the search. The people who indicated he had been there had not seen him for at least, I believe, three weeks. And law enforcement takes it back another three weeks. So you basically have almost six weeks when no one saw Mr. Howard there. What should have happened here is a warrant should have been at least attempted to have been gotten, but they could not have done it. And I think in this case there's just no probable cause to believe that Mr. Howard resided there. He was a guest. He was a frequent guest, but a frequent guest does not make a residence. And I would ask you to overturn the decision below. Thank you. Thank you. Thank both counsel. Submit that case. Next, take up United States v. Mateo Estrada.
judges: Noonan, Bybee, Schwarzer